UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

Alvin Brand,

Plaintiff,

vs. ORDER

U.S.S. Great Lakes Fleet,

Defendant. Civ. No. 01-2179 (RLE)

* * * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 24th day of March, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c), upon the Motion of the Defendant U.S.S. Great Lakes Fleet, Inc. ("Great Lakes"), for the imposition of sanctions. A Hearing on the Motion was conducted on January 30, 2003, at which time, the Plaintiff appeared by James A. Sage and A. Blake MacDonald ("MacDonald"), Esqs., and the Defendant appeared by Thomas W. Emery, Esq. For reasons which follow, we deny the Motion for Sanctions.

## II. Factual and Procedural Background

This is an Admiralty action, for personal injuries that the Plaintiff sustained during the course and scope of his employment

MAR 25 2003

(47)

on the M/V Roger Blough ("Blough"), a vessel that is owned and operated by Great Lakes. Specifically, our jurisdiction is predicated on the Jones Act, Title 46 U.S.C.App §688, and general maritime Law.

Great Lakes seeks sanctions in the form of a disgorgement of all evidence, a disqualification of defense counsel, the preclusion on the use of evidence, in addition to the imposition of a financial sanction. Great Lakes complains that, in violation of Minnesota Model Rule of Professional Conduct ("MRPC") 4.2,[1] which prohibits an attorney from speaking to an unrepresented party without

---

[1]MRPC 4.2 provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The Comment to Rule 4.2 addresses the Rule's application, in the context of organizations, as follows:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Id., at Comment -- 1985.

permission from that party's legal counsel, MacDonald spoke to one or more of the seaman, on the Blough, without the consent of Great Lakes' legal counsel. The underlying facts, which are undisputed, may be briefly summarized.

On the morning of October 26, 2002, the Plaintiff, accompanied by MacDonald, went to the fuel dock in the Duluth harbor, where they met the Blough. The Plaintiff, and MacDonald, boarded the vessel, and sailed on it to another dock in the Duluth harbor. During the course of that sail, MacDonald spoke with members of the Blough's crew, without having first obtained the consent of Great Lakes legal counsel. MacDonald has averred to the content of his discussions, with the vessel's crew, as follows:

> They were just untying the vessel when we got there and they invited me to join them for a cup of coffee. Not believing I was violating any ethical rules, I had a cup of coffee with the employees. As far as I knew, there were no supervisory employees there. The current chief engineer of the M/V Roger Blough introduced himself to me. We did not discuss anything pertaining to Alvin Brand's injuries as he stated he was not aboard the M/V Roger Blough when Alvin Brand was injured. I may have had casual conversations with other members of the crew, along with Alvin Brand. I certainly did not feel I violated any ethical rule.

Affidavit of MacDonald, at p. 1.

In addition, MacDonald has expressed his view that Title 45 U.S.C. §60, of the Federal Employers Liability Act, which is applicable to

this matter,[2] allows counsel for a plaintiff to converse with employees of a defendant "when those employees do not have managerial responsibilities."[3] Id. at p. 2. MacDonald has attested that, while he understood that the Captain, and the Chief Engineer of the Blough, had such supervisory responsibilities, he did not believe that other crew members bore such managerial duties. Id. at p. 1.

Great Lakes does not identify, in its Motion papers or argument, any specific information that MacDonald is said to have elicited from a Blough crew member, but intimates that, within hours of MacDonald's discussions with those crew members, the Plaintiff's theory of liability changed so as to allege that the Blough had "sailed short" -- that is, it sailed with less than the

[2]Recently, in a footnote in Britton v. U.S.S. Great Lakes Fleet, Inc., 302 F.3d 812, 817 n. 2 (8th Cir. 2002), our Court of Appeals explained that "46 U.S.C.App. §688(a) states that any seaman who suffers personal injury during the course of his employment is entitled to the rights and remedies available to railway employees."

[3]We reject the Plaintiff's suggestion that Section 60 authorizes a claimant's counsel to interview agents of the defendant employer. While the Plaintiff has cited authority for that proposition, see Lake v. Orgulf Transport Co., 1993 WL 194096 at *3-4 (W.D. Tenn., May 24, 1993), we are not persuaded that such authority is an accurate statement of the law. Rather, we find the Court's reasoning, in Weibrecht v. Southern Illinois Transfer, Inc., 241 F.3d 875, 879-81 (7th Cir. 2001), and Woodard v. Nabors Offshore Corp., 2001 WL 13339 at *4 (E.D. La., January 4, 2001), far more convincing, and adopt it as our own, without further elaboration.

number of crew members required by the United States Coast Guard -- at the time that the Plaintiff sustained his claimed injuries. In response, the Plaintiff notes that its original Complaint contained allegations that the Blough had sailed short, and suggests that Great Lakes was slow in disclosing its crew lists for the day of the Plaintiff's accident. See, Plaintiff's Complaint, at para. 7 ("[T]he Defendant, its agents, servants, and employees, by failing to provide sufficient crew and equipment to safely perform the duties attendant to the operation of the vessel, were negligent."). Great Lakes denies any failure to disclose, and emphasizes that the request for a crew list was both informal, and of recent origin.

III. Discussion

Not only were MacDonald's contacts with the Blough's unrepresented crew members unwise, they "overstepped the bounds of professional conduct." Meat Price Investigators Association v. Spencer Foods, Inc., 572 F.2d 163, 165 (8th Cir. 1978). We need not fully detail, here, the scope and effect of MRPC 4.2, as we have recently detailed that analysis in Paulson v. Plainfield Trucking, Inc., 210 F.R.D. 654 (D. Minn. 2002). Applying our construction of the Rule, as enunciated in Paulson, we are satisfied that all of MacDonald's contacts were with non-managerial employees of Great Lakes, with the exception of the "current chief engineer" who, MacDonald concedes, had "supervisory duties." Affidavit of MacDonald, at p.

1. MacDonald attests, however, that the "current chief engineer" was not on board the Blough when the Plaintiff was injured, and that he and the engineer "did not discuss anything pertaining to Alvin Brand's injuries * * *." Id. Great Lakes offers no showing, however slight, to contravene MacDonald's attestations in this respect.

Further, MacDonald has averred that, while on board the Blough, he "did not attempt to take any statements, drawings, photographs, etc." Id. at p. 2. While it was not an exercise of sound professional judgment to board the Blough, as MacDonald did, we are unable, on this Record, to find that Great Lakes has been prejudiced by that improvident judgment. Here, Great Lakes has identified no evidence, which MacDonald improperly gathered, which would either require disgorgement, or a preclusion on the admissibility of the evidence. While we hold the inherent power, and responsibility, to regulate and supervise the bar practicing before us, including wide discretion to frame sanctions for attorney abuses, "including attorney disqualification, the assessment of attorney's fees, monetary sanctions, and the dismissal of the action," such authority should be exercised with "great caution." Olson v. Snap Products, Inc., 183 F.R.D. 539, 541 (D. Minn. 1998), citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991), and quoting Ex parte Burr, 22 U.S. (9 Wheat.) 529, 531 (1824).

In matching any sanction to the offense committed, we conclude that the imposition of a sanction would not be an acceptable exercise of our discretion. We do neither endorse, nor condone, MacDonald's actions, but we are unable to discern any prejudice to Great Lakes' interests which warrant a monetary remedy. While Great Lakes seeks an award of attorney's fees, for having been compelled to file its Motion for Sanctions, in the absence of a cogent showing, that MacDonald actually obtained any information to Great Lakes' prejudice, we are not persuaded that the Motion was prompted by any more lofty motivation then bruised corporate, or professional, sensitivities.[4] Such subjective reactions are not an appropriate predicate for the sanctions being sought.

NOW, THEREFORE, It is -

[4]We understand that MacDonald's presence on the Blough was not authorized by Great Lakes and, likely as not, exposed Great Lakes to some risk of liability should MacDonald have sustained an injury while onboard. Great Lakes offers no showing, however, that MacDonald employed trick, artifice, or trespass, to gain access to the Blough, and his attestation, that he was invited on the vessel, has not been controverted in this Record.

ORDERED:

That the Motion of the Defendant for the Imposition of Sanctions [Docket No. 15] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE